Jack CINNAMON, Plaintiff,

v.

ABNER A. WOLF, INC., a Michigan corporation, A.C.F. Wrigley Stores, Inc., a Delaware corporation, and Gold Bell Gift Stamps Cooperative, Inc., a Michigan corporation, jointly and severally, Defendants.

Civ. A. No. 21397.

United States District Court
E. D. Michigan, S. D.

March 26, 1963.

Arthur J. Hass, Norman D. Katz, Katz & Victor, Morris Garvett, Levin, Levin, Garvett & Dill, Detroit, Mich., for plaintiff.

John Sklar, Maurice S. Binkow, Irwin I. Cohn, Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for defendants.

FREEMAN, District Judge.

This is a motion to dismiss a private antitrust suit where the plaintiff died during the pendency of the action. The sole ground of the motion is that such action does not survive. In support of this contention, defendants argue that in the absence of a federal survival statute for such claims, state law applies, and that under Michigan law, the action has abated.

The executor of the estate of the deceased plaintiff, Jack Cinnamon, has

moved to substitute himself as party plaintiff.

In support of his position that the instant action does survive, the executor maintains that federal decisional law governs and that under such law, an antitrust action survives a plaintiff's death. He also argues that the action survives under Michigan law.

The first question this Court must decide is whether federal or state law governs the survivability of an antitrust action where the statutes creating such action are silent regarding this particular issue.

■ In applying particular federal statutes such as the antitrust laws, the courts are primarily concerned in determining and effectuating the policies of such statutes and will turn to either federal decisional or state law to fill in the interstices present in these statutes, depending on which law is more apt to effectuate their policies. Pritchard v. Smith (C.A.8, 1961), 289 F.2d 153; Volume 1A, Moore's Federal Practice (1961), ¶ 0.323 [22], pp. 3757-9. In the recent Sixth Circuit decision of United States v. Helz, 314 F.2d 301, in considering this problem, the Court said:

"In diversity cases, since Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L.Ed. 1188, the law of the state governs the remedies. In cases arising under federal statutes, remedies are governed by the directive of the statutes or, if no directive, then by rules fashioned by the federal courts. A rule set up by a decision of the federal court may adopt the state law or may fashion the governing rule of law according to its own standards."

■ The purpose of Section 4 of the Clayton Act, Title 15 U.S.C. § 15, which provides for private triple damage suits is "to enlist 'the business public * * * as allies of the Government in enforcing the antitrust laws;' the means chosen, on the other hand, is to give 'the injured party ample recompense for the wrong suffered' by allowing threefold recovery of damages." Report of the Attorney General's National Committee to Study the Antitrust Laws, p. 378 (1955). In other words, the private antitrust suit is a substantial weapon in effectuating a national policy of protecting, preserving, and promoting free competition in the market place by blending "antitrust policy with private compensatory law." Id.

■ Assuming, arguendo, that under Michigan law [1] the action abated with plaintiff's death, an application of such state law in the instant matter would not be consistent with the national policy underlying the creation of a private anti-

---

[1]. An examination of the Michigan authorities reveals an interesting situation. In the case of Frohlich v. Deacon, 181 Mich. 255, 148 N.W. 180 (1914), the Michigan Supreme Court unanimously agreed that a cause of action for unfair competition and for a violation of the State Antitrust Act did not survive under the provisions of what is now M.S.A. § 27.-684, Comp.Laws 1948, § 612.32, and divided evenly over the interpretation of an amendment (since repealed) to the statute involved. However, in the case of Federal Gravel Co. v. Detroit & M. Ry. Co., 263 Mich. 341, 248 N.W. 831 (1933), the court held that a cause of action under the Michigan statutes for unjust price discrimination was not a personal tort which abated on the death of the injured party and, consequently, was assignable. The court considered the action as one for a tort to the plaintiff's property or estate. In the earlier opinion, the court only considered injury "to property," while in the later opinion, its consideration was broadened to include injury to the estate. If this Court were to decide the issue of survivability on the basis of state law, it would follow the reasoning of the court in Federal Gravel Co. v. Detroit & M. Ry. Co., supra. The other decisions on which the parties rely are not applicable. Jones v. Hicks, 358 Mich. 474, 100 N.W.2d 243, and Stebbins v. Dean, 82 Mich. 385, 46 N.W. 778 (1890), stand only for the proposition that fraud is a personal tort and does not survive. The case of Holmes v. Loud, 149 Mich. 410, 112 N.W. 1109 (1907), involved direct injury to plaintiff's estate and the cause of action was consequently assignable.

trust suit. The Supreme Court in Sola Electric Co. v. Jefferson Elec. Co., 317 U.S. 173 at p. 176, 63 S.Ct. 172, at pp. 173–174, 87 L.Ed. 165 (1942), held that state law or policy cannot nullify the prohibitions of a federal statute or deny its benefits, and stated:

"It is familiar doctrine that the prohibition of a federal statute may not be set at naught, or its benefits denied, by state statutes or state common law rules. In such a case our decision is not controlled by Erie R. Co. v. Tompkins, 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188]. There we followed state law because it was the law to be applied in the federal courts. But the doctrine of that case is inapplicable to those areas of judicial decision within which the policy of the law is so dominated by the sweep of federal statutes that legal relations which they affect must be deemed governed by federal law having its source in those statutes, rather than by local law. Royal Indemnity Co. v. United States, 313 U.S. 289, 296 [61 S.Ct. 995, 85 L.Ed. 1361]; Prudence [Realization] Corp. v. Geist, 316 U.S. 89, 95 [62 S.Ct. 978, 86 L.Ed. 1293]; Board of Comm'rs [of Jackson County] v. United States, 308 U.S. 343, 349–350 [60 S.Ct. 285, 84 L.Ed. 313]; cf. O'Brien v. Western Union Telegraph Co., [1 Cir.], 113 F.2d 539, 541. When a federal statute condemns an act as unlawful, the extent and nature of the legal consequences of the condemnation, though left by the statute to judicial determination, are nevertheless federal questions, the answers to which are to be derived from the statute and the federal policy which it has adopted. To the federal statute and policy, conflicting state law and policy must yield."

See also Chicago & N. W. Ry. Co. v. Davenport (C.A.5, 1953), 205 F.2d 589.

In support of their position, the defendants argue that prior to the passage of § 4B of the Clayton Act (15 U.S.C. § 15b), the federal courts applied the various state statutes of limitations. With respect to this argument, it should be noted (1) in the absence of a federal statutory period of limitations, the federal courts either had to follow the state statute or invade an area that is within the province of Congress; (2) the private party had some control over the matter, i. e., he could bring suit within the statutory period, while, obviously, no one can control death; and (3) though the state statute of limitations was applicable, federal law determined what was necessary to advance the federally created right to the level required to consider it "accrued" under state law. See Judge Friendly's excellent discussion of this point in Moviecolor Limited v. Eastman Kodak Co. (C.A.2, 1961), 288 F.2d 80, cert. denied, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26.

The defendants, in support of their contention that state law should apply, rely upon the concept enunciated in Erie R. Co. v. Tompkins, supra, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), that there is no federal common law, the Rules of Decision Act (28 U.S.C. § 1652) and Rule 17(b) of the Federal Rules of Civil Procedure. The defendants' reliance upon the "Erie doctrine" is not well taken in light of the previously discussed points that state law cannot thwart a federal policy expressed in a Congressional statute, and for the reason that where the courts in federal question cases have applied federal decisional law and rejected state law, or vice versa, it has been for the sole purpose of carrying out a Congressional policy. In other words, the approach to any particular problem is one of statutory policy and not the creation of decisional or common law.

The Rules of Decision Act (Title 28 U.S.C. § 1652) reads as follows:

"The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts

of the United States, in cases where they apply."

In overruling Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865 (U.S.1842), the Court in Erie R. Co. v. Tompkins, supra, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, held that the words "laws of the several states," as used in the Rules of Decision Act, included state decisional or common law as well as state statutes. The Court in Erie did not lay down any rule of law that in diversity cases state law automatically applies and that in federal question cases, federal law always governs. 1A M.F.P. ¶ 0.305 [3] (1961), pp. 3054–5; Hart & Wechsler, The Federal System (1953), 690–700. But the Court did hold that the source or origin of the right sued upon, and not the ground on which federal jurisdiction over the case is founded, determines the governing law. Garrett v. Moore-McCormack Co., 317 U.S. 239, 245, 63 S.Ct. 246, 87 L.Ed. 239 (1942); Maternally Yours v. Your Maternity Shop (C.A.2, 1956), 234 F.2d 538, 540, n. 1. In the instant case, the source or origin of plaintiff's claim is a federal statute and, consequently, state law is not made applicable by the Rules of Decision Act. It should be noted that such Act makes the "laws of the several states" applicable "in cases where they apply" and that where "Acts of Congress otherwise require or provide," such state law shall not "be regarded as rules of decision in civil actions in the courts of the United States."

Rule 17(b) (F.R.Civ.P.) deals with capacity to bring an action and does not affect survivability of an action.

None of the decisions upon which the defendants rely as authority for invoking state law involve the precise problem of the survivability of an antitrust action following the death of a plaintiff.

In the instant case, this Court concludes that federal decisional law governs the question of survivability, especially in light of the fact that state law, which may not be uniform on this question, could possibly defeat the policy of a particular federal statute. See Moore v. Backus (C.A.7, 1935), 78 F.2d 571, and Barnes Coal Corp. v. Retail Coal Merchants Association (C.A.4, 1942), 128 F.2d 645, holding that federal law determines survivability of an antitrust action; Hicks v. Bekins Moving & Storage Co. (C.A.9, 1937), 87 F.2d 583, applying federal law without discussion to an antitrust action; Nelson v. Knox (C.A.6, 1956), 230 F.2d 483, applying federal law without discussion to a civil rights action.

■ Various federal courts have considered the problem of survivability of an antitrust claim and have held or strongly indicated that such action survives the plaintiff's death. Moore v. Backus, supra, 78 F.2d 571 (specific holding of survivability); Hicks v. Bekins Moving & Storage Company, supra, 87 F.2d 583 (specific holding of survivability); Barnes Coal Corp. v. Retail Coal Merchants Association, supra, 128 F.2d 645 (holding that the state statute of limitations which governs actions that survive applies to an antitrust action, since such action survives the plaintiff's death). The courts have also concluded that such cause of action survives the death of a defendant. Rogers v. Douglas Tobacco Board of Trade (C.A.5, 1957), 244 F.2d 471; Banana Distributors, Inc. v. United Fruit Co. (S.D.N.Y.,1961), 27 F.R.D. 403; Haskell v. Perkins, et al. (D.N.J.,1928), 28 F.2d 222. See also Sullivan v. Associated Billposters & Distributors (C.A.2, 1925), 6 F.2d 1000 (the first major case this Court has found which recognized the survivability of an antitrust claim).

The Sixth Circuit Court of Appeals in Nelson v. Knox, supra, 230 F.2d 483, held that where an action is brought under the Civil Rights Act, 42 U.S.C.A. § 1983, in which it is alleged that the defendants intentionally destroyed the plaintiff's business, such action survives the death of the plaintiff. Significantly, the Court in that case cites and quotes extensively from the decision of Barnes Coal Corp. v. Retail Coal Merchants Ass'n, supra, 128 F.2d 645. The rationale of Barnes Coal, which the Sixth Circuit adopted,

is that an injury to a person's business is ultimately one to his estate and, consequently, the action survives. This reasoning is applicable to the case at bar, since the alleged injury sustained by the plaintiff, Cinnamon, was a financial or business loss which, in the final analysis, his estate must bear.

This Court concludes that an antitrust claim under Section 4 of the Clayton Act, 15 U.S.C. § 15, survives the death of a plaintiff. However, the Court does not pass on the survivability of the triple damage aspect of such claim at this time, in view of a split of authority as to this precise problem,[2] and because the parties did not argue this question.

An appropriate order may be submitted.

2. Compare the decisions of Moore v. Backus, supra, 78 F.2d 571; Hicks v. Bekins Moving & Storage Co., supra, 87 F.2d 583; Barnes Coal Corp. v. Retail Coal Merchants Ass'n, supra, 128 F.2d 645, which either hold or strongly indicate that the triple damage aspect survives with those of Sullivan v. Associated Billposters, supra, 6 F.2d 1000; Rogers v. Douglas Tobacco Board of Trade, supra, 244 F.2d 471; Haskell v. Perkins, supra, 28 F.2d 222, which either hold or indicate that triple damages do not survive.